Next case we're going to hear is Haywood v. Ford Motor Credit Company and Mr. Zeigel. Good afternoon, Your Honors. May it please the Court, my name is Corey Zeigel. I'm honored to be back in Richmond arguing on behalf of Michelle Haywood. The last case before, Your Honors, was about which court the litigation should proceed in. This case involves whether the litigation should be in court at all. Well, it should be in court, but the court should be stayed according to the statute. And we have some cases that cloud the issue. Is that it? Yes, Your Honor. Let's deal with that issue first, whether a dismissal is appropriate or even discretionary under the Federal Arbitration Act. What about under our authorities, our precedent? Well, I like to read this Court's authorities in saying, at the very least, the authorities say or have held that a district court judge can dismiss under Section 3, 9 U.S.C. Section 3, if all of the issues are arbitratable. There was another case thereafter. That's Choice Hotels. Choice Hotels. So is that dicta, was that necessary to the decision in that case? Well, this Court has questioned it since. Well, that's important, I think, in terms of what authority Choice Hotels has as to whether or not that one sentence that Judge Wilkins wrote is dicta or whether it was an essential foundation for that case. Well, in that case, I don't believe that the Court could have ruled, could have, at that time, could have had that case in front of it if the district court didn't have that discretion. Are you saying, are you talking about Choice Hotels? Yeah, Choice Hotels. And so in Choice Hotels, although there wasn't a complete analysis of statutory language, I think it was basing its decision off of prior interpretations of the statute from other circuits. And since that time, the circuits have split fairly evenly. But what I would say is, if we truly look at the language of 963, the courts that have held that the district courts do not have discretion to dismiss a case, they all read the statute by deleting important words. And the actual quote, and it's 101 words in a sentence, but the words that matter here are, quote, stay the trial of the action, end of quote. The Second Circuit and the Third Circuit, Katz and… What about the language in Section 16 of the Arbitration Act? An appeal may not be taken from any interlocutory order granting a stay of any action under Section 3. How do you get around that? Well, Your Honor, this wasn't an interlocutory order. I think that issue goes to whether or not we can be in front of the Fourth Circuit here today. And the Supreme Court has held that under Section 16, originally it wasn't an interlocutory order entered. On behalf of my client, we asked the court to reconsider that and enter a final judgment. So you wanted to dismiss it so you could stay, so you could get around that. Your Honor, we didn't make any secret about the fact that we wanted to be able to appeal right away. I'm not saying anything wrong with it. Yeah, that was the purpose. It seems to me, aside from the language of the statute, which looks pretty clear, the whole concept that Congress was considering in this act was not to be waylaid by litigation. The whole idea of arbitration was to bypass litigation and review it only later. And so if it's brought in a district court and arbitration is ordered, the concept was to stay the act. Courts have a role. I mean, it comes back to enforce the arbitration order or to supervise something during the course of the arbitration. And the case usually ends after it comes back. And you place the arbitration order in the court. That's why it's interlocutory. If it ended, if the arbitration was the end thing, the idea is that it has to be the end of the judicial proceedings in the case. And then you'd have to start a new lawsuit to enforce it. I don't think Congress had any – they wanted to streamline the process and eliminate the appeal. And I don't understand why – what's wrong with having you go down, do your arbitration, and come up with the whole package? Well, Your Honor, I don't disagree with your initial policy statement that Congress wanted to minimize litigation, push claims to arbitration, and have everything proceed. But where I disagree is the extent to which there could ever be a trial which is being stayed. So – There could ever be what? Well, in a situation like we have in this case, there can never be a trial. There will never be a trial. Well, unless the arbitration is inappropriate. Right. If the case – It can always come back. And when it's enforced, we get cases all the time challenging arbitration orders. And issues should not have gone to the arbitrator. That's a contractual issue. And – but at this point, the contract seems broad enough to cover the issues that are being raised. Right. And we didn't challenge – Yeah. And if that's so, you get your arbitration order. And then if you have some collateral judicial challenges, but I don't – and we handle a lot of arbitration. As has the Supreme Court. But it seems to me that designing the process is not interrupted at this stage. Well, Your Honor, in Section 16 of the Federal Arbitration Act, which talks about the rights to appeal at any point with respect to arbitration, there's broad rights that are given to the person who's denied their request for arbitration for immediate appeal. And then there's very limited ability for someone who is seeking to stay out of arbitration to appeal. But this is one of the situations where it's not strictly prescribed. And the United States Supreme Court in Greentree v. Randolph furthered that point. They held it under 16A3 that the words in the statute, final decision with respect to an arbitration, includes situations where district courts rule – where district courts dismiss the entire action rather than stay. Yeah, because there are numerous actions where portions of cases are remanded. And you have an ongoing conspiracy case involving contracts and everything. But some contracts issues have to go to arbitration. But here, the whole case is arbitrable. And it seems to me the act anticipates that the district court stay out of it, at least until you get that – it's like exhaustion of an administrative remedy. They want to get that done. You can come back and challenge whether it's contractually obligated or whether the arbitrator went out of bounds or he was biased or all the statutory grounds that are given for challenging the arbitration proceedings. But it seems to me this is pretty early on in the case. And he ordered arbitration. And he stayed it. And then I guess you persuaded him to change his mind. I would once in a while. Very persuasive. So you could appeal it. Exactly. So what do you want us to do? Well, Your Honor, what we're talking about now is a cross-appeal. So I prevailed on the issue. He did dismiss the case to allow this appeal. The cross-appeal is that he shouldn't have even – Judge Miles shouldn't have even had the authority to issue that order. That his only discretion – that there is no discretion under the act. You can only stay. But we're already here. And the Supreme Court had this exact situation. And they ruled on the merits of – But the choice hotels case seems to say that he could do what he did, right? That's correct. And so this court has held previously. But there are other cases. Well, previously in Hooters and Backers Inchart seemed to be there's some tension. Is there anything since choice hotels that discusses it? The only thing that I can bring to the court's attention is the several cases that I've been before this court on in which the exact same scenario happened. Henson v. Santander, Consumer USA. Judge Niemeyer was on the panel. That was the exact same situation. It was compelled to arbitration with a stay. I asked for a dismissal. We entered under choice hotels. It was Brandon. I came up. We argued the case on the merits. And it was affirmed on the merits that arbitration was – Do you think there's – I'm sorry. Not Henson. Is there a direct conflict between choice hotels and Hooters? Some of our cases seem to think that it is. Aguero v. MOL Ship Management. Novy v. Toll Brothers. If that's the case that there's a direct conflict, which one controls? Do you know what the legal principle is for that? The one that the court finds is precedential. Which one is precedent? Is that the first one? I'm just asking you. There's a legal principle that governs that. We have a legal principle that controls that. That'll answer your question. Right. Well, the most recent case – Is it choice hotels or Hooters? Or do you know? There's three choices for you. Well, I would say choice because that helps me. Because that's the most recent. But the legal principle is that when we have published opinions that are in direct conflict on a given issue, the earliest opinion controls. That would be Hooters. The Supreme Court would say otherwise. They would say we can change our mind on the latest governance. And we could overrule our principle. Correct. So there wasn't an overruling, a direct overruling. No, I understand. I think that Judge King is bringing to you the problem when you have these intention holdings and how we're supposed to sort them out. And I think that's why we're here. I think that's why Judge Mons agreed to dismiss to get this case before a panel here so we could set the record straight and decide whether the district court has this discretion or not. And I think he laid that out in his memorandum opinion to say it's important. So in your view, is this case – is the panel intended, as opposed to an en banc court, intended to resolve a conflict that may have existed between Hooters and the hotels? I love the experience of an en banc hearing, but it's before a panel. I think the panel has to decide before we get to en banc. And then obviously the court can decide. Then we have a rule. I gave you the rule. And one panel, as a general proposition, can't overrule another panel. But that's our decision, too, which we can overrule that principle. And in addition, the court has to decide which of the cases is the precedent. What's wrong with Judge King saying the precedent is the first case? I told you which one was precedent. Those two. We held that in a case. But the question is can't we overrule the principle? And the answer is we probably can because the normal principle is a court can always change its mind and overrule earlier cases. And the Supreme Court does it all the time. And then you ask, well, do you have to do it by en banc? And again, that's a rule we made. But other circuits, it's a jurisprudential rule, but other courts, panels overrule panels. And so I think we would choose to follow our rules that we've established. But then the question is how is the attention defined? Are they both holdings of the court, as Judge Agee asked you, or is one dictum and the other one a holding? You're in law school now. I know. I understand. You're going to have to write this out. You wanted to come up here. I agree. I asked. I asked for extra time. Well, I go back to in choice hotels that that case could not have been properly before a panel if the court didn't think that this court had the discretion. Maybe they were just playing wrong. Maybe they didn't read Hooters. Maybe the lawyers in those cases didn't cite it. They just missed it. Nobody cited Hooters for them. Nobody missed it. That could happen. I'm sure that I have missed cases in my briefs. What do you know about it? I'd ask that you review the two cases. What do you want us to do? If we had full freedom, what do you want us to say? Go back to court and litigate. That would be wonderful. But on this issue- You want us to say that Judge Motz was wrong when he ordered arbitration. Correct. What I'm saying is that you- I'm going to have to help you until you say what you want. This panel has the ability to make that ruling on the merits, even if the court decides- So you want to review the order to go to arbitration? Correct, Your Honor. And the Supreme Court allows this. Well, no, I don't care about the procedure now. I'm concerned about the substance. Yes, Your Honor. Didn't the contract commit these things to arbitration? Yes, and there was no argument that it was outside the scope of arbitration. The argument is that Ford Credit defaulted on its right to request arbitration by litigating the case through trial and through judgment. Let me ask you about that. If Ford Credit filed in federal court a claim on debt, to collect a debt, and the defendant counterclaimed and sued for violation of the antitrust laws, securities laws, and all these other things, and they had an agreement between them, and Ford says, in view of that, I want to go to arbitration. You can do that, right? Absolutely. No problem. They filed for debt in state court, a little one-day trial, and that ends it. Now you come back and file all these new issues under these CLEC and all the other statutes that are applicable. Can't they ask for arbitration then? Without defaulting? The fact they filed this little debt collection precludes them from asking for arbitration on the issues you raised? I don't know of a case that says that. You're referring to the litigation as little litigation. In district court, it was an undisputed judgment. They go to the circuit court, and there they have a one-day trial, and it's knocked out. That ended that case. But your issues are much more serious. Your issues are saying we're entitled to damages under these statutory damages, real damages under these debt regulation statutes, and they say, well, you've committed those to arbitration, and we want to go to arbitration. If they filed a counterclaim to those things, you said they could do that. Right, Your Honor. If they filed a counterclaim, I mean it was— What's the difference? They filed it in state court. You're filing it in federal court. Right, but the action was completed. And what Your Honor is referring to are the issues in the case, and the issues are the same. These are the exact same issues. The issue that was actually litigated and determined, if Ms. Haywood would have lost in that little case, she would be barred from bringing this action at all by res judicata. That's unquestionable. And that's why it's the same issue, it's the same facts, it's the same retail installment sales contract. And all the authorities from this court that go into whether or not a party has defaulted on— Yet they have to go so far as to commit and undermine the whole purpose of arbitration, so that a person who files in federal court and the defendant doesn't do anything, they go through depositions, they go through discovery, they have a pretrial order, and they're about ready to go to trial. And then one of the parties comes in and says, hey, I want to arbitrate. We've said you can't do that. You've gone too far, too much money, too much prejudice, and have denied it as waived. But that didn't happen here. Nobody has spent a lot of money and effort until we got to this federal case, and they filed immediately as soon as you filed. They said they couldn't arbitrate. Wasn't any arbitrator available? Right, well— And the court found that to be true. District court, judge Miles. Correct, and that finding by Judge Miles is not supported by what is in evidence in this case. So you're challenging his factual finding and his legal ruling? Well, Your Honor, we don't believe it's a factual finding. The unavailability of an arbitrator is a legal finding. The facts are— Well, if they had a policy, they're not going to give you arbitration panels in collection cases because it's clogging up the system. That's what he concluded, that the contract provided for arbitration before two arbitration associations, and those associations had undertaken a policy not to recognize arbitration for collection cases because they would have thousands or millions or whatever. Right, and consumers across the country have filed cases or have opposed motions to compel arbitration when creditors want to send these collection cases to AA, the same group that's named in this contract that we're saying is unavailable. And almost universally, the district courts have found that Section 5 of the Federal Arbitration Act allows appointment of a substitute arbitrator. If you want to arbitrate, the unavailability of the arbitrator that's named in the contract doesn't take away your right to arbitrate. It just takes away your right to arbitrate in front of that group or that person. I understand, but you're going to whether it's legally possible, and the district judge concluded as to whether they defaulted, which is a position they're taking they couldn't have in their understanding, and that wasn't held in bad faith. Now, maybe they could compel it through some big court proceeding, but it's much easier for them to go into the district court of Maryland, the old people's court in Maryland, and collect the debt than to go litigate a constitutional or a big statutory case. But that's hardly the same type of waiver that we've held in our cases where you go through the litigation so far, committed so far, that you can't abandon that now and say, oh, it's like getting the second bite of an apple almost. Your Honor, I see my time is fired, but can I answer this question? Oh, sure. Okay. Well, what you're referring to is still, again, it's the scope of the litigation, and we're saying because AT&T files a case against Verizon, and it's a $100 million case, of course that litigation is going to take five years, and it's going to require 100 depositions and hundreds of briefing documents. This case is smaller in scope, but the cases that come out of this trial. Well, you tried to make it pretty big. I mean, it's a class action. Well, it's an individual case currently. Right now it is. But the point is that when this court analyzes whether or not a person in favor of arbitration is defaulted, they look to the amount of trial-related activities that has been undertaken. And to me, I'm looking at a scale of justice on the days here, and it's like a scale of justice where the person in favor of… So we've got this people's court action on this side. It's not the people's court action. It's that the person in favor of default, the person in favor of arbitration, they start off with this very big advantage. It's like a thousand-pound weight that there's not going to be a default. And then the closer you get to trial, the more it stacks against never having a default. But this court has never had a situation before or before where an actual trial has occurred and a judgment on the merits has been finalized. What has happened in this court is that this court has stated over and over repeatedly that the closer you get to trial, the more likely it is that you could show a default. But you've never actually had a trial. And this court has found that only Evo trial requesting is default. Passing several trial dates is default. In this case, you filed. They filed it right after you filed your action on it. That's the current action. Yeah. What I'm talking about is this. If we look at the first action, and what if Ford Motor Credit filed a motion to compel arbitration after the trial in the people's court? We go through the trial. You know, soft trial. It wasn't a ton of preparation, but there was some preparation. We go to trial. We have the entire trial, two hours or whatever it was. The judge rests to decide what the ruling is going to be. And when the judge comes back, Ford Motor Credit says, Your Honor, we're going to make an oral motion to compel arbitration. In that situation, I'm pretty sure or I would like to think that this court— What is the circuit court? You took it from the people's court up to the circuit court. What if you added all your counterclaims in the circuit court, and they then demanded arbitration? Procedurally, that's not available because it was an appeal, but I'll take the proposition as a possibility. If the counterclaims would have been raised— They can't expand the scope of the action on appeal to the circuit court? No. Because it's de novo, isn't it? Correct. That's a strange rule. I must have had a hand in it. Yeah. At one point, it was a question. The Maryland rules were changed to explicitly prohibit the addition of claims on that. That's a good reason for that. I'm not going to disagree with that. No, I understand. Yeah. Well, so basically, what you want is to avoid arbitration and to review the arbitration order in this case. Yes, Your Honor. I think it's appropriate. The various telecourts that have taken the issue of whether or not there's discretion to dismiss after a dismissal has been entered, they've reached the merits of whether or not ordering arbitration was appropriate. So I would ask the court to reach that. Yeah. Mr. Byrne? Thank you. May it please the court, may I first apologize for the lack of historical grandeur in this case relative to its predecessor. We appreciate that, actually. There are nonetheless important issues of a procedural nature presented here. Let me begin with Choice Hotels, which we think we read that case only to be dictated with respect to its holding on the ability of a court to dismiss a case once arbitration has been ordered. Well, in your view, is the ruling in Choice Hotels contradictory to the essential ruling in Hooters? Which sets up the question of if they are, which controls? To me, they're almost like two ships passing in the night, Your Honor. May I say another word about Choice Hotels? I mean, it's clearly dictated. The dismissal in that case was actually sought by the moot, the party that was in Ford Credit's position. And the court went on to say, to state a principle, that where all the issues in a case are arbitrable, then the court has discretion to dismiss. But then it found, in the case before, that all the issues were not arbitrable and just remanded to the district court for further proceedings not inconsistent with its opinion. Now, the Hooters case came before Choice Hotels. It's 1999, I believe. And it flat out states that, quote, when a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the FAA commands federal courts to stay any ongoing judicial proceedings. Now, I must, in all candor, point out that that case involved a refusal to compel arbitration. So perhaps it could be considered to be dictum as well. It doesn't appear to us that there is a case in the Fourth Circuit that has a square holding on this issue. So it is open to this panel to finally clear up the tension that Judge King's opinion in Aguero identified in the circuit precedents with respect to this important issue. I thought he observed that tension. So the field is open for this court. Now, the precedents on this, the Katz case from the Second Circuit and the Lloyd case from the Third Circuit, both dead-on holdings, well-reasoned, point out the reasons for the rule, the reasons for the rule that the FAA prohibits this sort of maneuver to create an appealable order. And where there is a stay called for on application of one of the parties, the court is required to stay the case pending the conclusion of the arbitration. Is that only when all issues are determined arbitrable, or does that apply if some issues are arbitrable and others are not? It should apply in either case. It should apply whether all the issues are arbitrable or just some are. And there is an issue or an argument made here that the court should interpret Section 3 so that it applies only in instances where fewer than all the issues in the case are determined to be arbitrable. That would leave a gaping hole in the statute. It doesn't make a whole lot of sense. But Section 16, which was added in 1988, makes clear that under Section 3 the court has authority to stay the entire action. And so the statute does cover the most common situations where either all of the issues are arbitrable or none of them are. Your opposing counsel says that prohibition on appeal in Section 16 does not apply in this case since he moved from an interlocutory order to an order of dismissal. What's your response to that? My response to that is, Your Honor, that literally may be true, in that the Section 16 refers to interlocutory orders. But what Section 3 doesn't permit and it's reinforced by Section 16 is a manipulation with all due respect to the district court and opposing counsel that went on here to create a final appealable order where the purpose of Section 16 and the purpose of the FAA really is to permit arbitration to go forward without further litigation until the arbitration is concluded. Now there can be a role, sometimes an important role, for the court while the arbitration is pending. If there's a need to select a new arbitrator, if there's a problem with discovery from third parties, for example, but that role is limited. And the purpose of the amendment was to make clear that, in very explicit detail, that Section 1292B and its certification procedure governs whether or not a particular issue about arbitrability will get to the next level. That requires the certifications under 1292B by the district judge, requires a petition to this court, and it requires that this court That's the way it ought to be done. That's the way it ought to be done. Rather than do it this way. That's right, Your Honor. You ought to be staying and get a certification to try to get it up that way. That's correct, Your Honor. Did Katz address that option? Other than quoting the statute, Your Honor, I don't believe so. What Katz focused on was the mandatory language of Section 3, exactly. In the Lloyd case, the Third Circuit pointed out the practical benefits of having the case remain suspended to the parties to the arbitration rather than dismissing the case, and if there's a problem or a need for judicial intervention during the arbitration, not having to file an entirely new case in some court or jurisdiction. Go back to the district court. That's correct, Your Honor. It also persists in the time-honored tradition of not allowing piecemeal appeals. That's correct, Your Honor. And the Tenth Circuit is also aligned with the Second and Third Circuits with a holding that a stay is required and dismissal is not permitted. Now, the cases that are cited by the appellant for the converse proposition are either clearly indicted in cases where the party who sought arbitration did not seek a stay for one reason or another, just moved to dismiss, or the case predated the 1988 Act. There's no square on holding on the other side. The statute requires a request for stay, doesn't it? It does, Your Honor. It does. Now, to address the relief we seek is that the order of dismissal be vacated and that the case be remanded to reimpose the stay and allow the arbitration to go forward. That would obviate any need to consider the merits of the appeal with respect to the waiver claim. We don't believe, to address those quickly, that that claim would have any merit if it were properly heared. The standard for decision is any doubts concerning waiver are to be resolved in favor of arbitration. This Court has made clear that anybody seeking a finding of waiver faces a heavy burden of trying to establish waiver and that the requirement is actual prejudice from the prior trial-oriented activities and not simply some intent to wait. There must be actual prejudice shown to the party opposing arbitration. There's none here to Ms. Haywood. Of course, she won the prior case. She will never be subject to a deficiency. So that's been established. That's binding. No question about it. There's never really been any explanation about what prejudice she suffers from having her affirmative claim. She got a windfall, actually. The Court probably could have found the value of her car in a flea market through testimony and awarded her the differential between that and the Mannheim figure. I'm not sure, Your Honor, but you're an expert on marital law and it could be under CLEC. I lost all that expertise through bad memory. Well, CLEC is a complex statute, as Your Honor knows, and so that may have been permissible. But at any rate, she won, and she's going to stay the victor on that deficiency claim. It's only when her affirmative claims were first raised six months after she won in the deficiency case that Fort Credit sought immediately to have these claims arbitrated. We agree with you on the cross appeal. We don't need to get into any of that. You do not, Your Honor. That's right. Anything else? No, Your Honor. Thank you. All right. Zydell. How should I pronounce that? Zydell. Zydell. Exactly right. Well, I tried to give more emphasis to the J, but it's more like an I, right? Zydell. We don't even know if we're saying it right. We're saying it like my grandma and grandpa said it. I've got to learn it. You come up here and visit us a lot, and it's good. I enjoy it. I enjoy coming back. Didn't your grandmother say it? She said Zydell, but she was Polish, and her accent was… You ought to defer to her. I do. My dad said Zydell. There's tension. My grandma's not alive anymore. I go with my dad. It sounds like I should base the focus of this argument on the issue of whether the district has the ability to stay. You know, just to give you a good target, it appeared to me before coming in here that the Second and Third Circuits had a very reasonable approach to this for reasons, and the holdup was our decisions in Detroit's hotels and Hooters and these other things, and I don't know what your answer is to all of that, but it sounds to me like if we had a clean slate, we're able to write the Second and Third Circuits and maybe the Tenth Circuit, or whatever, had the right take on the statute. So the real question, I suppose, is to undermine that belief or holdup. Well, one thing I can say is that this Court has never analyzed the statutory text of 9 U.S.C. 3. That's too bad. In Choice Hotels, it's one sentence. It cites to Dean Witter from the Fifth Circuit, and there's not really analysis. It just kind of says, oh, Dean Witter said this. The Circuit said this. We're going with that. Hooters also doesn't have… It doesn't sound more like it. No, they were adopting the position of the Fifth Circuit for that appeal to go forward. Hooters also doesn't analyze the statutory text. So this would be the first occasion in which the Court could write an opinion, analyzing what the actual words say on its own court. The Fourth Credit argues that Choice Hotels is the proposition you're relying on is dictum. What's your take on that? Well… Dictum, basically a statement that doesn't control holding. Well… The statement in Choice Hotels leads to the ability to have a holding that the Court is finding. The holding was in view of the fact that there was an issue that was arbitrable. We're going to remand it. Correct. And they reached that by getting past this first hurdle of whether or not the case could be there, whether the case was appropriately decided in the first instance, that this dismissal order, that the district judge had this discretion between dismissal and stay. And I would note that in the Supreme Court case in which this came up and which Fourth Credit says the Supreme Court let open, which was Greentree versus Randolph, in that case, in a footnote, Greentree, the language in the footnote too, it says that the question was whether or not the district court should have entered a stay or dismissal, should have, which to me reads as discretion, not what was entitled to or must have, but that sounds discretionary to me. In that action, they're not going to review whether or not the district court was right. It sounds to me like what you just quoted suggests that the issue of stay or dismissal is one that we haven't decided. It's governed by the statute. No, Your Honor. What I'm saying is the Supreme Court said in Greentree versus Randolph that it was a discretionary decision, that they're not going to review that discretion. That issue wasn't brought up on this appeal. So they weren't going to decide whether or not it was correct to stay or to dismiss. They weren't saying in this footnote that it's never appropriate to dismiss. You could dismiss it if the case was dismissible, if the arbitration clause didn't cover the issue in the case and the case was a 12 v. 6 and you throw it out. I mean, there are a lot of hypotheticals you could raise where the court would dismiss it. But the question is whether they were construing Section 3 to give that discretion. Well, Your Honor, that case was in front of the Supreme Court on the same issue where all the issues presented in the action were arbitratable. And that's why a dismissal order was entered in that case, and that's how it got up to the Supreme Court. And so Ford Credit analyzes that. The footnote is saying, oh, they reserved this issue saying whether or not there's discretion at all between a stay and a dismissal. And I read that footnote as the Supreme Court saying they're not going to decide whether or not the district was correct in its discretion to issue a dismissal order rather than a stay order, which would be a case-by-case basis, decided on a case-by-case basis. And, Your Honor, I did want to briefly address something that I didn't have a chance to talk about that Ford Credit brought up, which is related to the merits of the arbitration decision, deciding to send the case to arbitration, and that's actual prejudice. We were discussing the scale of justice, and the closer you get to trial, the more likely it is you'll find default. And counsel for Ford Credit says, yeah, but there's no talk of any actual prejudice in this case. But there is actual prejudice in this case because res judicata is a judicial creation that the courts will apply. Well, if it went the other way, maybe. But you ended up winning, so there's no res judicata doesn't play a role in your prejudice in this case. Right. It does because there is no requirement that an arbitrator follow this judicial creation. There's no – an arbitrator is not required to apply res judicata to the facts and issues already decided in that deficiency action. Ford Credit says, oh, we're not going to re-litigate this issue. Well, if it was in court, of course not, because Judge Motz would have this in front of him and say, oh, these are the same facts, these are the same legal claims that were already determined under res judicata. Just as it would have barred Ms. Haywood had she lost, it would also favor Haywood in the litigation. But in arbitration, she's – I can't say for a certainty, but there's no rule or reason that the arbitrator would be required to apply this res judicata. And they can come right back from the beginning and argue that there was no violation based on the notice that the Maryland State Court already ruled on. And so, yeah, I believe that is actual prejudice. We're going back and we're re-litigating this entire matter just as if Ford Credit had asked to compel arbitration right before a judgment was issued, right before a court would sit down and issue a ruling after a trial. So in closing, I would just say I believe that district courts do have discretion to issue a dismissal when all things are arbitratable. And I would ask this court to reach the merits of the appeal on whether there was a default by Ford Motor Credit in light of its history in determining what trial-oriented, trial-related activities can cause a party to default. Thank you. All right. We'll come down and – He's got – he's got – Oh, yes. Mr. Burns, you have some more time on your cross. Your Honor, I don't think we need to address that. I've got a question I want to ask Mr. Burns. You don't have – you can stay there. Stay right there. Stay right there. How would you have us dispose of this appeal if we agree with you? I would request that the court vacate the dismissal order and remand – Vacate the dismissal order entered by Judge Mott. That's correct. And remand with instructions that the arbitration proceed and that the stay be reimposed. So we – so you say we have jurisdiction over the appeal because he entered a dismissal order, but we ruled that the dismissal order was improperly granted or entered and vacated. Order is vacated. That's correct. Okay. I just wondered what your idea was. That's correct, Your Honor. There is perhaps a jurisdiction on another appellate jurisdiction issue working there, but it overlaps entirely with the FAA question, which is a far easier question. Thank you. All right. We'll come down and agree counsel and then proceed on the next case.
judges: Paul V. Niemeyer, Robert B. King, G. Steven Agee